May it please the Court, my name is Victoria Baranewski. I am here for counsel for appellants and I'd like to reserve two minutes for rebuttal. Appellants request that this Court grant the simple relief of ordering the government to publish readily available data that exists and is tagged in the ATF database. To reach that conclusion, it need only consider three the information falls within the scope of that statute, and third, whether the production of records is a creation of a new record. Here, the plain and simple language of the two statutes leads to the conclusion that the TR amendment is not a withholding statute because it meets none of the requirements of the Open FOIA Act. Second, that the information does not fall within the scope of the statute because Subpart C permits for the disclosure of statistical aggregate data. And third, that the search of a database, of a government database, is not the creation of a new record, according to the EFOIA amendment, as well as case law for the past two decades. Counsel, the TR amendment doesn't say, allows disclosure of statistical aggregate information. It says the publication of statistical aggregate information. So that's a very different thing, don't you think? That is correct. Those are two words that are used, but publish and disclose essentially mean the same thing. And in fact, under FOIA, publish, disclose, release, produce, these are all words that are used interchangeably. In fact, the very opening line of FOIA states, the government shall make public. Similarly, in other places in FOIA, the statute says the government records that have been released. In 55A3B, it says provide records. And even to the extent that Congress did mean to intend two different meanings, I would argue that publish, in fact, means something much broader. And that's because it's a proactive requirement, whereas disclosure is simply a passive requirement. Isn't publication a permissive requirement that you're allowed to publish versus you're required to disclose? I think, once again, that both of these words are ones that are used interchangeably. But what's the basis of that? The basis for that is actually, in part, the practice even of the ETF, where it has chosen to disclose and publish records, as well as provide information through FOIA. But the T-HART has disclosure, I think, in subsection B, correct? So if that were true, why didn't they just use the disclosure twice or continue it from there? Well, I think that actually the three subparts actually are divided according to the terms and the content. So the content of the information differs somewhat among the three subparts. I would like to also add, however, that if we could return to the first issue, whether first Exemption 3 even applies in this case, it is important to note that FOIA Exemption 3 is not a withholding statute because it doesn't meet any of the three requirements. So in order to be a FOIA withholding statute, the statute must specifically exempt the information, leave no discretion on the issue, provide particular criteria, and additionally cite to the Open FOIA Act. Dealing with these requirements in reverse order, the Open FOIA Act is not cited in the T-HART amendment. Wait, so you're kind of skipped over the argument about which year's T-HART amendment actually applies in this case. And I think that's sort of the preliminary discussion we need to have. If that is the preliminary discussion, Your Honor, it's still the law favors appellants. The Supreme Court and the Ninth Circuit have stated in Inerit Glacier that repeal of statutory provisions while disfavored is appropriate in cases where Congress provides information that's language that's comprehensive and meant to include all prior provisions. So your position is 2012 is the T-HART amendment that applies here? That's correct, Your Honor. And that it wholly replaced every other iteration of T-HART amendments? And it does. When you actually look at the language, it's comprehensive. It speaks to all the former T-HART amendments and what was included within them. It speaks to the whole subject and then therefore was meant to replace that information. And in fact, the canon of surplusage supports this conclusion because otherwise you'd have these varying forms of T-HARTS that are floating around with different rules for the agency to comply with. Moreover, the Southern District of New York in the Evertown case found that Second Circuit and Fourth Circuit case law supported that authority. I would also, once assuming that that does apply in this case, Congress had two opportunities, both in 2010 and in 2012, to cite to the Open FOIA Act. In fact, it was... that 2012, which is operable, does not cite to Exemption 3. It is fatal, Your Honor. And Congress did, in fact, take this requirement seriously. It cited to this language just one month after the 2012 Consolidated Appropriations Act in the National Defense Authorization Act, which is a much more serious set of information that the government withholds. How can the Congress that passed the Open FOIA Act in 2009 bind a future Congress? The Congress in 2010 and 2012? Well, that's an issue that has not been briefed, and we would be happy to provide further briefing on it in this case. And in fact, however, I will bring to the attention of Your Honors, Burwell v. Hobby Lobby, 573 U.S. 682. It's a case that actually postdates Dorsey, which is the argument that you speak of, and there RFRA required an explicit reference requirement and did bind Congress. And in fact, there is a conception here that obviously Congress must be able to bind itself to certain extents for the laws to make sense. Courts have taken this requirement seriously as well. In addition to Everytown, where the court found that the tiart was not a withholding statute, also a District of Columbia case called Long v. Ice, which we did not cite in our brief, 149F sub 3D from 2015, found the Federal Information Security Modernization Act was similarly not a withholding statute. Say we believe you that tiart doesn't apply and FOIA requires disclosure, but if ATF will then violate tiart, so what happens then? What's the penalty for violating tiart? So the tiart will still stand, and FOIAs can be submitted regardless. And there are a plethora of exemptions that apply in the FOIA context, which the government applies in cases all the time. And in fact, if it has concerns about privacy and law enforcement, there are specific exemptions, B-6 and B-7, that apply to that. In fact, there are five exemptions under B-7 for law enforcement. Well, focusing on tiart, if ATF violates tiart, what happens? I'm not sure what the penalty under the tiart would be to the agency, but I would assume that if the court favored appellants in this case, it actually would not be a violation of tiart, but would, in fact, actually just be how the law is read. And here, statistical aggregate data, moving on to the second issue, statistical aggregate data is, in fact, something that Congress intended for it to be disclosed. Here, the plain language of the statute – data in the factual record to determine on appeal whether the total number of FOIA requests you've made would be naturally produced by a reasonable search of the FTS, or would it require more significant human analysis? It's our understanding that the record discloses that ATF has stated on page 11 of its reply brief that there are four codes that exist that would disclose this information – S-5, S-6, S-H, and D-N. And, in fact, it's stated that S-5 is a routine code that the agency employs, which indicates, quote, this firearm was traced to a government and or law enforcement agency. That's almost word for word what was in the request. Based on that, as a practical matter, what is your understanding of what ATF would have to do to respond to your request for disclosure? Based on that, it is our understanding that ATF would simply have to put in one of these codes, which already tags the information, and essentially – Be put in, like sit at the computer and type in, search for this code. Our understanding is just as the integrated database applies, a code would be put in, and it would essentially spew out, and you would press enter. And so it's not clear what's the production of a new record. Is it putting in that code? Is it pressing enter? By what the agency has stated in its own briefs, it doesn't seem to be anything laborious which it suggests in this three-step process. So the data, from your perspective, the data is all there. It's organized in such a way that if the appropriate question is asked on the computer, the answer will be there. It does not require further analysis, any algorithms, or anything like that. Is that correct? That's correct. The government conflates the terms search with analysis. Obviously, both searching and analyzing a database requires some form of judgment. Search requires judgment as to where the records exist. So agents all the time consider, is it in this filing cabinet? Is it in that one? Analysis requires what the information means and often requires information that's outside of the database added into that to add to the meaning of that. If the government's argument succeeds, it would be like opening a filing cabinet is the production of a new record. I would also add, however, that there are cases that have held for a long time in the district court. I think it would be searching among the files in the filing cabinet for one particular file is more analogous to what you're asking them to do. I think that that is a more accurate analysis. In fact, you're asking them to count the number of files in the file cabinet. We are actually just asking for the number of weapons that came in aggregate terms from the years 2006 to present. So it's not pulling out a file, it's counting all the files. It's actually, however the agency wishes to disclose this information, it may. In many cases, an agency will redact one column. In another way, it could simply just plug out the number that already exists in the database. In fact, in cases of emails, for example, this metadata is already tagged in the metadata of when the email was sent. That information already exists. It's not that it has to be counted. That number already exists in the database. Do you know if that's true in this case, in the trace database, that that number exists and they just have to pluck it out? Well, that's what a closeout code suggests. That's what it means. It's about tagging information. And I would like to add that in courts that have analyzed this question over and over in the D.C. Circuit, Long and Skladysh, those courts have gone even further and have said that even having to establish a query would not be the production of new records. So, for example, in Skladysh, the court said extracting and compiling data that did not previously exist in the database was not the production of new records. But the court went even further. It said the programming necessary to conduct that search is a search tool. Cases have also echoed this, such as Long v. Ice. And I would also add that the government, in its interpretation of the TR amendment, is conflating it with FOIA. FOIA nowhere says that statistical aggregate data cannot be released. And, in fact, the district court adopted this error in its decision on the very last page by citing to paragraphs 19 and 20 of the Hauser Declaration. And there, ATF was discussing how ATF regularly prepares statistical reports utilizing trace data. That's paragraph 19. Paragraph 20 stated that statistical reports are prepared and created by experienced specialists. That's paragraph 20. Those are the only two paragraphs that the district court cited to in its decision when it was discussing the creation of new records. It did not cite paragraph 25 in the Hauser Declaration, which actually discussed the search of the database. I would like to reserve the time if I could. All right. Thank you, counsel. Thank you. Good morning, Your Honors, and may it please the court. My name is Robin Wall. I'm an assistant U.S. attorney, and I represent Defendant Appali, the United States Department of Justice, and specifically the ATF component in this case. I would like to address the fact this, contrary to C.R.'s assertions in this case, affirming the district court's decision will not have broad implications for FOIA, and I think we can see that by focusing on the text of the statute and the text of the Tiahrt writer. In March of 2017 — But do you agree that we're looking at the 2012 Tiahrt? Your Honor, I think that the legislative history of Tiahrt is a little more complicated than that. In 2005, the Tiahrt writer was passed that had a language that is at issue in this case and has remained unchanged through every iteration of the writer. So this language is in 205 and 212? Yes, Your Honor. Then why don't we just look at 2012? So if we look at 2012, the language at issue is that — or any other act may be used to disclose part or all of the contents of the FTS database maintained by the ATF, and all such data shall be immune from legal process and shall not be subject to subpoena or other discovery. That language was the same in 2005, had prospective effect in 2005, the same in 2008, had prospective effect then, 2010, and 2012. It remains unchanged. Why does it need to have prospective effect if it's reenacted? It sort of seems like it's irrelevant since the same language is in 2012. Well, I think that's important to understand in this case because the language remains in effect until an intent is expressed to repeal or modify it. By virtue of the fact that the Congress passed identical language in 2010, restated it in 2010, and restated it in 2012, there was no intent to change the prohibitory effect of that language. So what we're looking at is language that's been in place with forward-looking effect since 2005. I don't understand why we wouldn't just look at 2012 if it has the exact same language. There's no effect to it. If we look at 2012, it says the same thing. What possible effect can the 2005 language have? The reason why we look at the continuity of the language and the lack of any intent to modify it is because post-2009, the Open FOIA Act required an explicit cross-reference to effect an exemption from disclosure because what we're looking at is language that's been in effect and unchanged since 2005 when the Open FOIA Act did not exist. If 2005 was in effect, why would they have to reenact it in 2012? Because if you look in 2008, they made changes to the exemptions to the disclosure prohibition. What had happened in 2008, there was concern in the Congress that the language prohibiting disclosure was going to prevent ATF from putting together statistical reports that it had generated on an annual basis for the Congress and for the public and for the firearms industry. And so they put in the exemptions that we're dealing with, including the Exemption C, Section C, about statistical aggregate data and the publications that ATF had been doing, and they put that in 2008 to make clear that ATF could spend appropriated funds to do the work it had always been doing. In 2010, there were slight modifications to the exemptions from the prohibition on disclosure, and in 2012, it was largely restated. I guess the ultimate point here is that the 2009 Open FOIA Act's requirement of a cross-reference doesn't apply or isn't relevant because the language at issue in this case has been unchanged since 2005, and Congress's intent is clear to restate and maintain that language. Isn't it also true that a future Congress cannot – a past Congress can't bind a future Congress? I think that that's correct, Your Honor, and that's in the Dorsey case in 2012 from the U.S. Supreme Court. It wasn't addressed by the parties in the briefs. Yeah, why not? That's a – that's a fine question, Your Honor. I think we have been focusing on the fact that there was no expression of intent in 2010 or 2012 that varied from congressional intent in 2005 or 2009 with respect to the prohibition on spending funds. I think it's another – it's important to look at the T.R. Ryder as a prohibition on spending money on appropriated funds. It's not a disclosure prohibition. The effect of not being able to spend funds accomplishes a disclosure prohibition, but it's not as if in 2005 they said you can't disclose the firearm trace record. So what is the – what's the penalty for violating the T.R. then? Well, I think, Your Honor, I'm not entirely sure, but it raises the point. I'm not sure there's a penalty for violating the T.R. Right, well, there's the Anti-Deficiency Act, isn't there? There is the Anti-Deficiency Act. I mean, I would assume some group would sue the administration or sue Congress for spending funds that were not appropriated for that purpose, which we see all the time. Well, I think it's a criminal penalty, actually. One of the reasons we're here is that the ATF takes very seriously its responsibility to follow the statutes that govern its conduct. And if the Court were to decide that FOIA applies to compel the disclosure of firearm trace records maintained in the FDS, ATF would be in a bind. Can I ask you, I'm just curious, what is at stake here? What's going on behind this case? Why is the disclosure or not of this particular information a battleground? I think, Your Honor, if the Court were to adopt plaintiff appellant's interpretation of FOIA, it would create a new mechanism under the FOIA that would vastly expand the public the what FOIA demands agencies do. What FOIA provides is a record request mechanism. It says the language, let me, is in Section 552a3a, reprides that each agency upon any request for records which reasonably describes such records and is made in accordance with certain published rules and procedures shall make the records promptly available to any person. Now, as Your Honor pointed out, it doesn't mention publish, and so that's another distinction between tie art, the exception and the text, but it refers specifically to records, not to information, not to data. And that's why the courts have consistently held that FOIA is not a mechanism by which the public can ask agencies questions or ask them to conduct research or, in this case, conduct statistical analysis of the firearm trace records in the FTS database. So could you explain? Would you answer the question I asked your opposing colleague? What, as a practical matter, if we got beyond all these other issues, the ATF was to do the search. What would as a practical matter would it have to do? Absolutely, Your Honor. It would be, I think the clearest metaphor, it would be asking ATF if they had a physical file cabinet and there was a file drawer that had all of the firearm traces that traced a firearm back to prior law enforcement ownership. It would be asking an ATF employee to go to that drawer and count the records and report the number of records, not provide the records, but count the number and provide the number of records per year to the requesting party. Now, that's a question about the type of records, the number of records, the distribution across years of those records. It's not a request for the production of the records themselves. And that's the critical difference. Wouldn't that just be a sort function? And so wouldn't a number just pop up? So you're exactly right, Your Honor. What would likely happen is an ATF employee with knowledge of how the database is structured, the data in the individual records and the fields in the records would construct a query or a series of queries to the database. According to your opposing counsel, they say, oh, no, you would just put in this particular, search for this particular code which represents that the firearm was ultimately traced to law enforcement. That's correct, Your Honor. They would put in a code or codes and conduct a number of queries, and they would either identify all of the records that match the criteria, and then they could count them, record the number, retain that recorded number, but there's no record. Wouldn't it just pop up? Like if you put, you know, this code, press enter, wouldn't everything – I'm thinking about how I search my email. Yes. Wouldn't everything with that code just pop up? It may pop up, but then you have to print it, which is creating a record. You have to take a screenshot, which is creating a record. We have to write down the results and create a record. Software allows us to pose queries. Well, isn't that the record? If the number pops up, that's the record. All you're doing is printing it. Popping it. Yes. That's information that you can derive from the database by completing queries. It's not a record. Well, I don't know if – I mean, I'm not saying you lose on all these legal arguments. I'm just saying, you know, can we have a common ground of what, you know, you put in the code, you press enter, the results come up. It's like – I mean, I do this in my email all the time when I'm trying to find what were all the emails on X subject or sent by whom. Just put the name. Pops up. Print it out. Right. Well, but that's not what a record is. And the courts have called – what the courts call a record is a recorded document that the agency has decided to retain. Now, ATF in this case conducted a search for any documents, any records, whether in electronic form or whether in physical form where the statistical information that plaintiffs were seeking had been recorded and retained. There were no such documents, which makes this case very ordinary in terms of FOIA requests. Just so I understand, you're saying the counting of the documents is the act of creating a record. Correct. Well, I think the counting of the documents is the analysis required. The creation of the record is in recording and retaining that in some form that can be produced. Counsel, wouldn't you agree? Now, the D.C. Circuit deals with these far more than we do, but my reading of their cases that deal with this suggests that your construction of what a record is is unduly simplistic. My understanding of what the law is at this point is that you can't require human beings to create something that doesn't already exist. In other words, if you have a bunch of numbers and you have to analyze the numbers and come up with a new thing, that's something different. But if we agree with the plaintiffs' appellants in this case, don't we just really have to send this back to the district court to determine whether, in fact, human involvement really is necessary to create a record? My sense of this is that if a very simple few keystrokes is all that's required as a result and you print out the document, that's a record. That doesn't really involve the kind of thing that the amendment was designed to prohibit. Do you agree with that? I don't agree with that, Your Honor, and let me explain why. The declaration we submitted in support of the cross motions for summary judgment from Charles Hauser, who runs the Firearm Trace Center at ATF, makes clear that more than just a search is required to produce statistical aggregate data about the records in the database. I think it's important to be clear about what the database is. It's a collection of firearm trace records. I understand. Again, perhaps I didn't say it well or you didn't hear what I said. Yes, Your Honor. I'm suggesting that if we agreed in theory with what they're saying, we send it back to the district court. The district court could analyze, based on testimony or whatever, what's actually required to produce what they're specifically looking for, and then the district court could make a determination whether, in fact, that involves enough human involvement that it doesn't comply. We don't have the data we need, I don't think, to make that determination, do we? I think we do, Your Honor, but I understand that more information could be developed. We could have more fine-grained information about what physically would be required to generate questions, answers to the questions that they're asking. If we go back to appellant's FOIA request, they don't ask for records. They ask for information about the number of traces that the ATF conducted that went back to prior law enforcement ownership from 2006 to the data request March 2017. Now, there are no records. ATF searched, didn't identify any records that revealed that data. Let me ask you this. This is hypothetical, I understand that. Let's assume all this is on an Excel spreadsheet, and each year is in there, and all you do is ask a question about the sum of these columns. Is that the creation of a record? That would be the creation of a record because that's statistical information about the records themselves. But if the records are the data that you're summing, why is that not permissible? In an ordinary case where there wasn't a prohibition on disclosure of the records themselves, you could produce the records requested, all of the traces that went to prior law enforcement ownership in an Excel spreadsheet, and it would list across the columns in various fields different data in each record, and then you could sum them. Yeah, you could redact all that and you'd just have the number of records, right? So that's not creating a record. But that is information about the records and not the records themselves. So if you had the spreadsheet, for example, you couldn't include any one column in the spreadsheet. Yeah, but you could just include the number. But the number doesn't appear on the spreadsheet. You'd have to do something else to say what the number of rows was or the number of… In the world of Excel, though, that number would just appear in the bottom. I guess you would see what the last row was. Correct. You would have to segregate it by year to determine the number by year and report those numbers. In any event, whether it's easy or hard isn't the point. Right. FOIA requires lots of hard things. Right. It also permits lots of easy things. But the fact that the statistical analysis here, it's easy to answer a Plowman's question, isn't at issue. FOIA doesn't have an interrogatory mechanism. It's not a mechanism for asking questions of government agencies about their records. It has a record request vehicle mechanism to get the records themselves. So from your perspective, anything that they request, unless it exists in a visible form, if you will, without any human involvement, without any keystrokes, is not available. Is that correct? No, Your Honor. FOIA requires the agency to conduct a reasonable search, so to produce records identified and requested. So if there weren't a prohibition on disclosure, what an ATF employee would do would search the database, identify the records that reflected the information sought, and produce those records subject to other exceptions to disclosure under FOIA, for example, for ongoing criminal investigations, et cetera. Do you contest that the information that is requested is in your ATF database? It is not in the database, Your Honor. The database is a collection of firearm trace records. You could use software tools or human tools to determine, to ask questions about those records. For example, how many of a certain type exist in these over a given time period. But that information doesn't exist. It's not a database of statistical information about the records. It's a database of records. All right. Does anyone have any other questions? Okay, thank you. Thank you, Your Honors. First, I'd like to address Judge Pumate's point that the Open FOIA Act can't bind Congress. However, it's worth noting that by that same logic, the Tiart Amendment, which currently does not exist in the current version of the Consolidated Appropriations Act, would also similarly mean that the Tiart Amendment can't bind future Consolidated Appropriations Act. I thought Tiart says all future fiscal years, so it's meant to apply prospectively until it's repealed. It's unclear as to what that means, and by that same logic, it wouldn't apply. Moreover, there is also a Supreme Court case called Tennessee Valley Authority v. Hill, a case by Judge Berger, that said that repeals by implication when the subsequent legislation is an appropriations measure is especially disfavored. So here, it would be appropriations bill, the Consolidated Appropriations Act, essentially vitiating the FOIA Act, which is specifically a disfavored approach under the Supreme Court. But aren't you arguing the same thing, that the 2012 Tiart repealed the 2008 Tiart? We are saying that, but that is... Same thing. It's not the same thing because those are both in the same statute, so they're both appropriations acts speaking to one another, and they are comprehensively speaking to each other because they're about the same issue and the same information. I would like to just simply add that if you look at the timeline of issues, in 2008, the Tiart expands the amount of information that's disclosed. 2009, you have the Open FOIA Act, and then 2010 and 2012, you have a rubber stamping language. And particularly, what we're dealing with here is exemption creep, which is exactly what the members of Congress were concerned about with regards to the Open FOIA Act. I'll just note two other things. One is that the agency has conceded that we do have enough information here as to how to obtain the information within the database. And the e-FOIA amendment, if you look to the language specifically within it, it expanded the term record to mean any format, including any electronic format. And it stated specifically that, quote, sorting a database by a particular data field, e.g. date, category, and title, with the application of codes or some form of programming does not involve creating a new record. And in fact, practically speaking, that makes sense because it's less complicated. The legislative history supports this, and I think the record stands. Do you mind giving me that Tennessee Valley site again? Yes. It is Tennessee Valley Authority v. Hill, 437 U.S. 153, pages 190 to 91, 1970, and it was Justice Berger. Thank you. All right. Thank you, counsel. The Center for Investigative Reporting v. U.S. Department of Justice is submitted. Thank you.
judges: Wardlaw, M. Smith, Bumatay